# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT INDIANA
# FORT WAYNE DIVISION

| | |
|---|---|
| KARLA WYSS, | |
| Plaintiff, | |
| v. | CAUSE NO.: 1:15-CV-355-TLS |
| PETSMART, INC., | |
| Defendant. | |

## OPINION AND ORDER

This matter is before the Court on Defendant PetSmart, Inc.'s, Motion for Summary Judgment [ECF No. 30], in which the Defendant seeks judgment as a matter of law on Plaintiff Karla Wyss's claim that the Defendant terminated her employment in violation of the Age Discrimination in Employment Act (ADEA). Based on the Plaintiff's Complaint allegations and deposition statements, the Defendant did not believe that the Plaintiff was pursuing a retaliation claim under the ADEA. In response to the Defendant's Motion, the Plaintiff asserts that genuine issues of material fact preclude the entry of summary judgment on both age discrimination and retaliation claims, and that her retaliation claim was in the Charge of Discrimination attached to the Complaint. The Defendant filed a Reply brief, and the Plaintiff has sought permission to file a Sur-Response. The Court has considered all the briefs, including the proposed Sur-Response [ECF No. 43-1], and accompanying evidentiary submissions under the requisite standards, and finds, for reasons set forth below, that the Defendant is entitled to judgment as a matter of law.

## STATEMENT OF FACTS

Karla Wyss began her employment with PetSmart in August 2009 when she was fifty-six years old. The Plaintiff was hired to be a Pet Trainer I in the PetSmart location referred to as Store 1841. In January 2010, the Defendant promoted the Plaintiff to Pet Trainer II, and, again, six months later to Pet Trainer III. On October 1, 2012, the Plaintiff received her final promotion to Area Pet Trainer.

The Plaintiff generally had positive performance reviews, particularly as it related to her contact with customers and promoting sales for training classes. Her performance ratings in the areas related to team and interpersonal skills were not as strong. For example, the Plaintiff's lowest rating—"2-Borderline"—for her August 23, 2011, review was in response to whether she "[r]espectfully supports and communicates with associates and managers" and [i]mproves performance in response to feedback and coaching." (ECF No. 32-1 at 25–26.) The rating was, presumably, impacted by a coaching she had received four months earlier related to her ability to work as a team with a new trainer. A month later, she received a formal coaching on the issue. The Action Plan for the formal coaching documented the Plaintiff's ongoing treatment of the store's new trainer, and the Plaintiff's improper attempts to have the other employee fired or moved to another store based on the Plaintiff's concerns about her own commissions and her personal dislike of the other employee. The management team concluded that the Plaintiff "was not acting with dignity and respect for her follow coworkers and management staff," and that "[t]hese actions could have [led] to creating a hostile work environment." (ECF No. 32-1 at 28.) The Plaintiff was expected to review the Defendant's "Dignity in the Workplace Policy" and to understand how to address future concerns with an associate.

The Dignity in the Workplace Policy's stated intention is to ensure that the Defendant's work environment is "free from discrimination, harassment, and retaliation" and extends "further than the law requires." (ECF No. 32-1 at 11.) Thus, associates are "expected to conduct themselves in a professional, respectful manner when interacting with coworkers" and others they have contact with during their employment. (*Id.*) The Policy warns that "associates whose conduct falls short of illegal discrimination, harassment, or retaliation may nonetheless be counseled or terminated for violating this policy if their conduct fails to live up to our standards or professionalism, courtesy, and common decency." (*Id.*)

The same Dignity in the Workplace Policy was cited as the basis for terminating the Plaintiff's employment in November 2014. In January 2014, a PetSmart cashier filed a written complaint with the Defendant regarding the Plaintiff's treatment of her. The employee recounted numerous statements that the Plaintiff made to her, and complained that she "had never done anything to [the Plaintiff] to deserve being talked to like this and treated like I'm dirt." (ECF No. 32-1 at 35.) The complaint was placed in the Plaintiff's personnel file. In September 2014, store manager Sherri Bencze documented three employees' reports that the Plaintiff had been speaking negatively about another associate, Michael Reef. According to the reports, the Plaintiff told the employees that Reef did not fit in at the store, and that he was driving customers away. Bencze and operations manager Chuck Vannatta met with the Plaintiff to ask her about the reports that she was talking about Reef to team members and leaders in the store. She did not deny making the statements about Reef.

Bencze's report details others statement that the Plaintiff made during their conversation. In her Affidavit, filed in response to the Motion for Summary Judgment, the Plaintiff disputes the portion of Bencze's report that indicates that the Plaintiff referred to Reef as "retarded," and

3

said she was going to call him "special needs." (Pl.'s Aff. ¶ 9, ECF No. 36-1.) It is not disputed, on the record before this Court, that the Plaintiff claimed Reef was going to drive customers away because he was "over the top," she did not like working with him, and he rubbed her the wrong way. (ECF No. 32-1 at 40; Pl.'s Aff. ¶ 9.) The Plaintiff also complained that she believed the store was hiring "young kids" and was phasing out "old people." (ECF No. 32-1 at 40; Pl.'s Aff. ¶ 9.) Bencze wrote that the Plaintiff expressed her disagreement with "the direction of the company in wanting team members with tattoos and gages [sic] in their ears." (ECF No. 32-1 at 40.) Bencze then reminded the Plaintiff of the Dignity in the Workplace Policy, and that there was not to be any discrimination on the basis of age, race, appearance, or sexual orientation. Bencze and Vannatta reminded the Plaintiff of the need to work as a team despite differences in personality. According to the report, the Plaintiff expressed doubt as to whether she would be able to work with Reef, and she was reminded that it would not be possible for the Plaintiff, who was a full-time employee, not to be scheduled with Reef.

Then, on October 7, 2014, management again met with the Plaintiff to discuss her treatment of Reef, as Reef had reported that he felt harassed by the Plaintiff. During the conversation, the Plaintiff admitted to having problems with Reef, and not wanting to work with him. She stated that she assumed he was gay, but that her dislike of him had nothing to do with that. Management again reviewed the Dignity in the Workplace Policy with the Plaintiff. The Plaintiff again requested not to be required to work with Reef, and different options were discussed, including whether the Plaintiff could remain the Area Pet Trainer if she reduced her hours below full time.

On October 9, 2014, Vannatta documented a conversation he had with the Plaintiff in his office at her request. During the discussion, the Plaintiff voiced her concern about what she

4

believed was "childish, immature and unprofessional behavior" of her coworkers. (Pl.'s Aff. ¶ 11.) This included their assumption that the Plaintiff was fighting with another co-worker when, in actuality, they were only talking loudly to be heard over the noise of kennel area dryers. The Plaintiff also expressed her concern over management's acceptance of employees displaying tattoos and piercings, and unprofessional behavior, including gossiping and cliques. (*Id.*; ECF No. 32-1 at 47.) According to Vannatta, when he asked the Plaintiff if there was anything management could do to help her,

> She simply replied "Get rid of Michael (Reef), or at the very least, do not schedule me (Karla) with him. She also asked if there was something she could do to help out her own situation and I replied "please lay off of Michael, he has done nothing to you, and he does not deserve to be treated the way you treat him." She told me she has no intentions of treating him any different, and then just smiled and laughed. At this point, the conversation ended.

(ECF No. 32-1 at 47.) Vannatta ended the report with the following observation:

> I found it curious that in the same conversation in which she voiced concern over associates bringing their personal lives to work, she changed the topic and started focusing the direction of the conversation over her dislike for Michael Reef. She wants others to not smile and laugh and connect with Pet Parents, and does not want personal lives brought to the store, but yet she cannot get over her own unfounded, personal dislike for Michael. This is very counterproductive, and it is continuing to make Michael and the staff extremely uncomfortable.

(*Id.*) The Plaintiff addressed Vannatta's report in her Affidavit:

> During the October 9, 2014 meeting with Vannatta, we also talked about whether arrangements could be made so I did not have to work with Michael Reef. I never told Vannatta though that I had or intended in the future to mistreat Reef if I continued to work with him. I also never told Vannatta that I did not want any of my coworkers ever to smile or laugh or "connect with Pet Parents."

(Pl.'s Aff. ¶ 12.)

The next time that management met with the Plaintiff was on October 19, 2014, at the Plaintiff's request. Bencze included another manager, Ty Orminson, in the meeting as a witness. The Plaintiff complained about a potential break down of appropriate boundaries between

5

management and employees, pointing in particular to a new employee who was perceived as trying to be buddies with management. The Plaintiff expressed her disagreement with the direction the company had gone with social media, which could make it more difficult to supervise staff. Bencze explained that the company wanted employees to use social media to be proud of their work. The Plaintiff stated that it was nonsense, and the company wanted all young people working there. In her Affidavit, the Plaintiff expounds on the comment, explaining that she believed the Defendant had been making a conscious attempt to cater to the interests and habits of employees who were well under forty years old. (Pl.'s Aff. ¶ 13.) During the meeting, Bencze again reminded the Plaintiff that speaking about employees' ages and calling younger staff "young kids" was not appropriate. (ECF No. 32-1 at 49.) The conversation again turned to the Plaintiff working with Reef, and the Plaintiff was reminded of the Dignity in the Workplace Policy and being respectful of others.

On November 18, 2014, District Manager Doug Vidano and Bencze met with the Plaintiff. The purpose of the meeting was to discuss the Dignity in the Workplace Policy.[1] The parties acknowledged that the Plaintiff was having a difficult time with the new employees, and Bencze provided four examples based on complaints she had received from other employees at the store. The Plaintiff did not agree with every characterization of her interactions or with each report of what she had said. In some instances, she did not believe that her comments had been inappropriate. The Plaintiff complained that comments she had intended as jokes were not taken as such, and that there was a double standard because the younger people could joke around. The Plaintiff stated that she did not know if she fit in with the younger people. According to the

---

[1] The Plaintiff maintains that she was misled before the meeting to believe that it was about something else, but no one disputes that the meeting was used to address concerns about the Plaintiff's adherence to the Dignity in the Workplace Policy.

Plaintiff, Vidano stated that if it was not a good fit, perhaps she should move on. At the conclusion of the meeting, management did not believe that the Plaintiff had committed to treating team members with dignity in the work place.

After the meeting, Vidano and Bencze discussed the Plaintiff's continued problems following the Dignity in the Workplace Policy and relating to other employees. They consulted with the Defendant's Human Resources department and decided to terminate the Plaintiffs' employment for violating the Dignity in the Workplace Policy. The Plaintiff was advised of her termination on November 19 or 20, 2014.

## ANALYSIS

Summary judgment is appropriate if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Summary judgment is the moment in litigation where the non-moving party is required to marshal and present the court with evidence on which a reasonable jury could rely to find in his favor. *Goodman v. Nat'l Sec. Agency, Inc.*, 621 F.3d 651, 654 (7th Cir. 2010). Although facts and reasonable inferences are construed in favor of the nonmoving party, this does not extent to inferences supported only by speculation or conjecture. *Singer v. Raemisch*, 593 F.3d 529, 533 (7th Cir. 2010). Material facts are those that are outcome determinative under the applicable law. *Smith v. Severn*, 129 F.3d 419, 427 (7th Cir. 1997).

### A.    ADEA Disparate Treatment

The ADEA makes it unlawful for an employer to take adverse action against an employee who is forty years or older "because of such individual's age." 29 U.S.C. §§ 623(a)(1), 631(a).

7

Age must be "the 'reason' that the employer decided to act." *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 176 (2009). "To establish a disparate-treatment claim under the plain language of the ADEA, therefore, a plaintiff must prove that age was the 'but-for' cause of the employer's adverse decision." *Id.*

Discrimination claims may be reviewed on summary judgment under the direct or the burden-shifting methodologies. *See David v. Bd. of Trs. of Cmty. Coll. Dist. No. 508*, 846 F.3d 216, 224 (7th Cir. 2017). When a plaintiff responds to a motion for summary judgment on an intentional discrimination claim by relying on the burden-shifting framework created by *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), a court should assess the case in those terms. *Id.*; *see also Ferrill v. Oak-Creek-Franklin Joint Sch. Dist.*, 860 F.3d 494, 499 (7th Cir. 2017) (noting that *McDonnell Douglas* burden-shifting analysis has not been displaced). When the plaintiff does not present her argument in opposition to summary judgment in those terms, the direct method of proof is the "default rule." *Bagwe v. Sedgwick Claims Mgmt. Servs., Inc.*, 811 F.3d 866, 880 (7th Cir. 2016) (quoting *Morgan v. SVT, LLC*, 724 F.3d 990, 997 (7th Cir. 2013)). Under that method, the test for whether a claim of intentional age discrimination should proceed to a jury is whether the admissible evidence, considered as a whole, would permit a reasonable factfinder to conclude that the plaintiff's age caused the adverse action. *See Ortiz v. Werner Enters., Inc.*, 834 F.3d 760, 765 (7th Cir. 2016) (setting out the standard for avoiding summary judgment on discrimination claim under the direct method of proof). In all cases, the question at summary judgment remains: "has the non-moving party produced sufficient evidence to support a jury verdict of intentional discrimination?" *David*, 846 F.3d at 224; *see also Liu v. Cook Cnty.*, 817 F.3d 307, 315 (7th Cir. 2016) ("The proper question under either method is simply whether a reasonable trier of fact could infer retaliation or discrimination."); *Bass v.*

*Joliet Pub. Sch. Dist. No. 86*, 746 F.3d 835, 840 (7th Cir. 2014) ("[T]he fundamental question at the summary judgment stage is simply whether a reasonable jury could find prohibited discrimination.").

The Plaintiff has not invoked the *McDonnell Douglas* burden-shifting method to refute summary judgment; she is proceeding under the direct method of proof. (Pl.'s Mem. 12, ECF No. 37.) The question before the Court, then, is whether the evidence as a whole would permit a reasonable factfinder to conclude that the Plaintiff was dismissed from her position at PetSmart on the basis of her age. Such evidence may include:

> (1) Suspicious timing, ambiguous oral or written statements, or behavior toward, or comments directed at, other employees in the protected group; (2) evidence, whether or not rigorously statistical, that similarly-situated employees outside the protected class received systematically better treatment; or (3) evidence that the employer offered a pretextual reason for an adverse employment action.

*Tank v. T-Mobile USA, Inc.*, 758 F.3d 800, 805 (7th Cir. 2014) (citing *Alexander v. Casino Queen, Inc.*, 739 F.3d 972, 979 (7th Cir. 2014)).

The Plaintiff cannot point to any ageist statements by decision-makers that would suggest age played a role in the Defendant's decision to terminate her employment. The Plaintiff contends that other evidence points to the Defendant's bias, including the Defendant's workplace policy changes and her manager's favoritism toward younger co-workers. The Plaintiff saw Bencze conversing casually with the other employees in her office and bringing them candy bars and treats. Bencze was, according to the Plaintiff, not friendly with the Plaintiff, did not bring her treats, and only talked to her if it was work-related. The Plaintiff perceived that, even though Bencze told the Plaintiff she and the other employees were not to be chatting while on the sales floor instead of working, the under-forty employees were permitted to "spend work time gossiping, acting like they were in high school, and acting silly instead of completing their

9

tasks." (Pl.'s Mem. 3, citing Ex. J (Pl.'s Dep.), Def. Ex. 1-M (Oct. 9, 2014, Notes by Vannatta), Def. Ex. N (Oct. 19, 2014, Notes by Bencze).)

The Plaintiff argues that younger employees "were granted accommodations at the store that can reasonably be inferred was an accommodation geared towards appealing to younger, as opposed to middle aged or older employees. Previously forbidden practices were now permitted at the store, such as employee's openly displaying tattoos, piercings, and unnatural hair color at work, all of which were practices more common and stereotypical of people in their teens, twenties and thirties rather than an individual in their forties, fifties and sixties." (Pl.'s Mem. 13.) The Plaintiff complains that, in contrast, the one accommodation she requested, "simply not to be scheduled to work with Michael Reef," was denied. (*Id.*)

These arguments are not persuasive. The only entitlement the Plaintiff had with respect to the discrimination claims in this litigation was not to be fired due to her age.[2] The ADEA is not an accommodation statute, nor does it require an employer to accord special treatment to members of the protected age group. The Defendant did not require that the Plaintiff begin displaying tattoos, piercings, or any other practice "stereotypical" of younger people to keep her

---

[2] The unlawful practices under the ADEA are:

>   (1)  to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age;
>
>   (2)  to limit, segregate, or classify his employees in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's age; or
>
>   (3)  to reduce the wage rate of any employee in order to comply with this chapter.

29 U.S.C. § 623(a).

10

employment or to receive the full benefit of her employment. The Defendant simply allowed others to do so, regardless of their age. Her requested "accommodation," in comparison, appears to go directly to the reason the Defendant states that it terminated her employment. It lends credence to management's belief that the Plaintiff harbored an unfounded, personal dislike for Reef that impacted him and the other employees. That an employer is willing to tolerate tattoos and piercings, and a certain level of juvenile behavior, but not disrespectful or hurtful treatment among its workers is not a decision that points to invidious age discrimination.[3]

Considering the record as a whole, it remains just as likely that non-discriminatory reasons, such as personal affection, prompted Bencze to only bring treats for and socialize with the younger employees. *Cf. Rummery v. Ill. Bell Tel. Co.*, 250 F.3d 553, 559 (7th Cir. 2001) (noting that statistical evidence in an ADEA case does not show disparate treatment where it does not "take 'into account nondiscriminatory explanations'" (quoting *Radue v. Kimberly-Clark Corp.*, 219 F.3d 612, 616 (7th Cir. 2000)). According to the Plaintiff, every other employee was younger (within the 20 to 39-year old age range), so *any* favorable treatment to the other employees could, by the Plaintiff's view of matters, be considered proof that her employer favored younger workers and that her termination was due to her age. The Plaintiff goes so far as to argue, without any supporting evidence, that the Defendant had a "preference for hiring employees under forty." (Pl.'s Mem. 13.) The record, however, contains no evidence to support this conclusion beyond the Plaintiff's assertion that every other employee was younger than 40.

---

[3] The Plaintiff claims that permitting certain behavior favored younger workers, but at the same time does not want to be viewed as disapproving of the age of her co-workers apart from their behavior. She stated in her Affidavit that her statements to Vannatta during their October 9, 2014, meeting were not directed at the age of her co-workers, but about behaviors that she would have found inappropriate and unprofessional no matter the employees' ages. The Plaintiff does not articulate why this same rationale, which focuses solely on an actor's conduct rather than his or her age—should not apply to the Defendant's disapproval of her actions.

11

For example, there is no evidence about the applicant pool for associates at PetSmart during the relevant time frame, or statements from persons involved in the hiring decisions.

In addition to general favoritism toward younger employees, the Plaintiff believes that younger employees received a different level of discipline. The Plaintiff states in her Affidavit that she saw Kyndra Morton, a manager in her thirties, "come to work intoxicated," and that on one occasion Morton said she was "still half-drunk." (Pl.'s Aff. ¶ 7.) The Plaintiff has not presented any evidence that Morton's superiors, or the decision makers involved in the Plaintiff's termination, knew of Morton's conduct. Even assuming the relevant individuals knew, the Court does not have any information about what course of action they chose to take. This is not evidence that would lead a reasonable jury to believe that when the Defendant addressed the Dignity in the Workplace Policy with the Plaintiff, the real reason was some ulterior age-based motive.

The Plaintiff faces another significant hurdle to proving that intentional age discrimination led to her termination: the Defendant has consistently maintained that the Plaintiff struggled to follow the Dignity in the Workplace Policy, and that was the reason it terminated her employment. In fact, in the meetings leading up to her termination, the Policy was repeatedly cited and the Plaintiff was told that it was not appropriate to comment on people's age in the workplace. The Plaintiff counters that she consistently received positive performance reviews and was a high performing employee, as evidenced by letters of recommendation written in 2015 by former co-workers. There are several reasons why this is not evidence from which a jury could find that the Defendant was lying when it said her termination was for violating the store's Dignity in the Workplace policy. First, whether the Plaintiff was meeting the Defendant's legitimate expectations during past performance reviews is not relevant. *See Naik v. Boehringer*

*Ingelheim Pharm., Inc.*, 627 F.3d 596, 600 (7th Cir. 2010). The Plaintiff must show that she was meeting the Defendant's expectations at the time the Defendant decided to terminate her employment, in November 2014. *Id.* Additionally, statements about her competency as a dog trainer, and the quality of her work in general, do not address the issues that the Defendant indicates the Plaintiff was having with her co-workers. *See Fane v. Reynolds, LLP*, 480 F.3d 534, 540 (7th Cir. 2007) (noting that an employee's pay raises and adequate performance of some aspects of the job, but having a confrontational and disrespectful attitude, could not show that the employee was meeting the employer's legitimate expectations).

The Plaintiff argues that the documentation from the various meetings is not entirely accurate regarding what the Plaintiff said, either in the meetings themselves or what she was reported to have said to other employees. However, much of what was recorded remains undisputed. The potential differences that remain are not material, and the Plaintiff's focus on a fraction of the statements in an attempt to minimize their frequency or severity does not establish pretext. Importantly, it remains undisputed that management fielded numerous complaints from the Plaintiff's co-workers, either through written complaints or its open-door policy, that the Plaintiff was mistreating them in the specific ways alleged. The Plaintiff presents no reason why the Defendants were not entitled to believe these reports. Nor do her objections cast doubt on whether the Defendant held a genuine belief that she had not committed to following the Policy, particularly given the number of times the Policy had become an issue leading up to her termination, and the Plaintiff's continued expressions of dislike for Reef and the overall direction the Defendant was taking with respect to its employees.

The Plaintiff, by diminishing the severity of the Defendant's claims about her actions, argues that the reasons were not sufficient to warrant termination. But when attacking an

employer's reason, a plaintiff must do more than disagree on this point. Pretext is not shown merely by demonstrating that the employer erred or exercised poor business judgment; instead the plaintiff must establish that the employer did not believe the reasons it gave for the adverse employment action. *Ritter v. Hill 'N Dale Farm, Inc.*, 231 F.3d 1039, 1044 (7th Cir. 2000). Thus, the only question asked is whether the Defendant had a legitimate, nondiscriminatory reason for firing the Plaintiff, not whether it made the correct decision. *Naik*, 627 F.3d at 601 (citing *Ineichen v. Ameritech*, 410 F.3d 956, 961 (7th Cir. 2005) ("[I]t is not the court's concern that an employer may be wrong about its employee's performance, or be too hard on its employee. Rather, the only question is whether the employer's proffered reason was pretextual, meaning that it was a lie.")). The Court does "not sit as a 'super-personnel department,' weighing the wisdom of a company's employment decisions; rather, [it is] concerned only with whether the employer's proffered explanation was honest." *O'Regan v. Arbitration Forums, Inc.*, 246 F.3d 975, 984 (7th Cir. 2001).

The Plaintiff also contends that the Defendant deviated from its standard procedures when it terminated her employment. The Plaintiff claims that several managers told her, at some point before Bencze became her manager, that there was a progressive discipline policy. She asserts that management skipped a step when it terminated her employment, which is evidence of pretext. "An employer's departure from its own policies may be circumstantial evidence of discrimination," *Bagwe v. Sedgwick Claims Mgmt. Servs., Inc.*, 811 F.3d 866, 882 (7th Cir. 2016) (citing *Rudin v. Lincoln Land Cmty. Coll.*, 420 F.3d 712, 727 (7th Cir. 2005)), but "there must be evidence of a specific policy that is regularly enforced and followed in similar situations, *id.* (first citing *Tank v. T-Mobile USA, Inc.*, 758 F.3d 800, 806 (7th Cir. 2014) (holding that there was not circumstantial evidence where plaintiff did not offer any corporate policy); then citing

*Long v. Teachers' Ret. Sys. of Ill.*, 585 F.3d 344, 353 (7th Cir. 2009) (holding no circumstantial evidence of discriminatory motive where the "policy permits the employer to exercise discretion"). However, the Plaintiff does not offer into evidence any regularly enforced company policy that the Defendant failed to follow. The Plaintiff's statements that certain managers told the Plaintiff that the store had "a multi-step disciplinary procedure that was supposed to be followed before someone was terminated" (Pl.'s Aff. ¶ 23), does shed light on whether it was regularly followed in similar circumstances, or reveal whether it included an element of discretion. The Dignity in the Workplace Policy itself, which is in the record, contains no such language. It states that a violation may result in counseling "or" termination. (ECF No. 32-1 at 11.) The Plaintiff's evidence would not convince a reasonable jury that the Defendant's stated reason for terminating her employment was not based on genuinely held beliefs about the Plaintiff's unwillingness to follow the Dignity in the Workplace Policy.

Finally, the Plaintiff asserts that the age of her replacement is proof that the decision to terminate her was age-driven. However, the record does not contain any admissible evidence that the Defendant hired a new Area Pet Trainer. Although the Plaintiff's Memorandum contains argument that a substantially younger employee temporarily replaced the Plaintiff, her statement of facts does not address the matter. The Plaintiff's Interrogatory Answers, however, identify Nichole Miller as the replacement employee. The Plaintiff testified in her deposition that Erin Emmett told the Plaintiff that she had been replaced with a recent trainee in her twenties. This unsubstantiated assertion does not show that Miller became an Area Pet Trainer. Vidano, in his Declaration, stated that the Defendant did not replace the Plaintiff's Area Pet Trainer position at Store 1841. (Vidano Dec. ¶ 22, ECF No. 32-1 at 5.) Interrogatory answers reveal that two employees holding the position of Pet Trainer worked at Store 1841 after the Plaintiff's

15

termination. The first worked from November 26, 2014, to February 3, 2015. The second began in January 2015 at the age of sixty-three and is still employed in the position.

The Plaintiff has not presented facts from which a reasonable juror could conclude that the Plaintiff would have kept her job if she was younger than forty, and everything else had remained the same. To succeed on her ADEA claim, the Plaintiff must show more than the possibility that age was a consideration in the Defendant's decision-making process. *See Gross*, 557 U.S. at 174 (stating that "[u]nlike Title VII, the ADEA's text does not provide that a plaintiff may establish discrimination by showing that age was simply a motivating factor"). Plaintiffs must show that age "'had a determinative influence on the outcome.'" *Mullin*, 732 F.3d at 776 (quoting *Van Antwerp*, 627 F.3d at 297). Here, the Plaintiff's evidence does not show that age played any role. Based on the above, even when considering the evidence in its totality and viewing it in a manner most favorable to Plaintiff, no reasonable fact finder could find in Plaintiff's favor on her ADEA disparate treatment claim.

**B.    ADEA Retaliation**

The Plaintiff claims that this case also involves retaliation, the theory being that she was terminated from her employment in retaliation for complaining about the Defendant's favoritism toward younger employees and its disparate treatment of the Plaintiff. The Defendant did not move for summary judgment on any retaliation claim, asserting that no such claim was being pursued in this litigation. The Defendant's position would seem to have merit, as the Complaint does not mention retaliation, and the Plaintiff confirmed in her deposition that she was not suing for retaliation. (Pl.'s Dep 103, ECF No. 32-2 at 57.) The Plaintiff counters that her Charge of Discrimination, which she attached to and incorporated into her Complaint, "made both the

discrimination and retaliation claims part of her Complaint even though the language in the formal paragraphs of the Complaint may not have expressly reiterated the retaliation claim." (Pl.'s Sur-Response 5, ECF No. 43-1.)

The Court does not agree that referencing the Charge of discrimination was sufficient to give the Defendant or the Court adequate notice that the Plaintiff intended to sue for retaliation. To being with, it was referenced in the paragraph of the Complaint that was intended to show that the Plaintiff had exhausted all her administrative remedies. (Compl. ¶ 3.) The factual allegations, set forth in paragraphs 4 through 7, do not set forth any fact pattern to suggest that the Plaintiff's termination was the result of retaliation for engaging in protected activity under the ADEA. Rather, the allegations culminate in the claim that the Defendant's proffered reason for terminating the Plaintiff's employment "was false and pretextual and that in reality the Defendant discriminated against and terminated the Plaintiff *on the basis of her age* (over 40), in violation of the Plaintiff's federally protected rights under the ADEA." (Compl. ¶ 7 (emphasis added).)

The principal function of the complaint is to give the opposing party sufficient notice of the allegation to which a response must be made. *See Conner v. Ill. Dept. of Nat'l Res.*, 413 F.3d 675, 679 (7th Cir. 2005) (noting that Rule 8 pleading "is vitally important to inform the opposing party of the grounds upon which a claim rests; a complaint is adequate only if it 'fairly notifies a defendant of matters sought to be litigated'" (quoting *Sundstrand Corp. v. Standard Kollsman Indus., Inc.*, 488 F.2d 807, 811 (7th Cir. 1973))). Here, the Defendant's Answer to Complaint [ECF No. 11] contains no response to an allegation regarding retaliation, because none was set forth in the Complaint. Before this Court, the Defendant did not answer the Charge; it answered the Complaint. The point made in *Wislocki-Goin v. Mears*, 831 F.2d 1374, 1381 (7th Cir. 1987),

17

that a "litigant may well reevaluate an initial charge of discrimination at the close of the administrative stage of the proceedings and bring to the district court only the claim or claims which, after the administrative proceedings, appear meritorious," is well taken. Therefore, simply referencing the Charge does not set forth a claim that is not pled in the Complaint. *See id.*; *see also Conner*, 413 F.3d at 679 (rejecting the plaintiff's claim that the defendant had notice of a claim by way of the EEOC charge attached to the complaint).

Thus, the Plaintiff would need to amend her Complaint to include a claim of retaliation. It is well settled in this Circuit that "[a] plaintiff may not amend his complaint through arguments in his brief in opposition to a motion for summary judgment." *Shanahan v. City of Chi.*, 82 F.3d 776, 781 (7th Cir. 1996). Even if the Plaintiff properly sought to now amend her Complaint, the Court would deny the request. Discovery has been closed for over two years. During that discovery, the Plaintiff testified that she was not suing for retaliation. Even if the Plaintiff were permitted to amend her Complaint, the claim of retaliation would be futile. For the same reasons that the Plaintiff cannot show that the Defendant's non-discriminatory reason for terminating her employment was not a pretext for age discrimination, she cannot show that it was a pretext for retaliation. Doing so would be a necessary step for a retaliation claim to survive summary judgment. *See Lauth v. Covance, Inc.*, 863 F.3d 708, 717 (7th Cir. 2017).

## CONCLUSION

For the reasons stated above, the Court GRANTS the Defendant's Motion for Summary Judgment [ECF No. 30]. The Court, having considered the Plaintiff's Sur-Response, GRANTS the Plaintiff's Motion for Leave to File Sur-Response [ECF No. 43]. The Clerk will enter judgment in favor of the Defendant and against the Plaintiff.

SO ORDERED on November 26, 2018.

           s/ Theresa L. Springmann
CHIEF JUDGE THERESA L. SPRINGMANN
UNITED STATES DISTRICT COURT